UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

UNITED STATES OF AMERICA

- against -

ANTHONY SCOTT,

        Defendant.

------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/28/14

MEMORANDUM OPINION
AND ORDER

14-cr-494 (SAS)

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.    INTRODUCTION

Anthony Scott faces criminal charges for being a felon in possession of a firearm. As part of its case against Scott, the Government intends to introduce the recording of a 911 Call in which the caller reported that a short, light-skinned black male brandished a gun and proceeded, weapon in hand, to the courtyard of the Mott Haven Houses, a development in the South Bronx. Scott has filed a motion *in limine* seeking, inter alia, to have the 911 Call excluded (1) as inadmissable hearsay, or (2) under the Confrontation Clause. For the reasons set forth below, Scott's motion as to the 911 call is DENIED.[1]

---

[1]    Scott's motion raises two other issues. *First*, Scott seeks to prohibit the Government from referring to him as a "convicted felon." *Second*, Scott asks the Court to strike any mention of his alias — "Tyson" — from the indictment.

## II.   DISCUSSION

On July 10, 2014, at 1:36 AM, the following call was placed to 911:

Operator: *911. What's the police emergency?*
Caller: Yeah, there's guys on Willis between 141 and 142nd, with a firearm he just pulled out on me.
Operator: *Where this happen to you, East 141 Street and East 142 Street?*
Caller: It's between 140 ... 143rd.
Operator: *143rd and 142nd?*
Caller: 143rd. 143rd and Willis.
Operator: *Willis Avenue and 143rd?*
Caller: Yes. He has on a white T-shirt, and [unintelligible] shorts [unintelligible].
Operator: *Is he [unintelligible] or Hispanic?*
Caller: He's light-skinned. I can't really tell. He looks black though. He's light-skinned and he has a lot of beads on.
Operator: *Black, light-skinned.*
Caller: He has a lot of beads on his neck. A lot of beads around his neck. He has like a pistol on him, a revolver. He pulled it out to my face and I ran.
Operator: *Black. Wearing a white shirt? You said wearing a white T-shirt?*
Caller: Yes. He's most likely inside of Mott Haven projects, like, the square.
[Pause]
Caller: The basketball court, inside the projects. Most likely he'll be in there.
Operator: *OK. Willis Avenue aid East 143rd Street. OK. He's male black, light-skinned, lot of beads around his neck, wearing a white shirt, inside the basketball court inside the projects?*
Caller: Or around that area. He's around that area somewhere. And he's with a couple teenagers with black shirts. He's short.
Operator: *What's your name?*
Caller: David Johnson.[2]

---

Both questions are reserved for the final pretrial conference on December 4, 2014.

[2]   11/17/14 Letter from Defendant to the Court ("11/17/14 Letter"), at 1-2.

Throughout the call, the caller's tone is urgent but composed. He is also audibly out of breath.

Scott challenges the admission of the 911 Call on two separate grounds. *First*, Scott argues that the call is hearsay, not subject to any of the exceptions enumerated in Federal Rule of Evidence ("FRE") 803.[3] This argument fails. The caller clearly indicates that, at the time of the call, the gun had "just [been] pulled out on [him],"[4] making the call a present sense impression — *i.e.*, "[a] statement describing or explaining an event or condition, made while or immediately after the declarant perceived it."[5] Scott disagrees. In his view, the "present sense impression exception is not applicable to this case because the caller is not describing an event while perceiving the event."[6] That Scott was unable to locate any authority for this understanding of the exception is not surprising. It clashes with the rule's plain language, which clearly specifies that statements qualify as a present sense impressions if (1) they are made "while . . . the declarant perceive[s] [the event]," or (2) they are made "*immediately after* the declarant

---

[3]     *See* FRE 803.

[4]     11/17/14 Letter at 2.

[5]     FRE 803(1).

[6]     11/17/14 Letter at 4.

perceived [the event]."[7]  Here, the 911 Call occurred immediately after the event that it recounted.  It is therefore admissible under FRE 803(1).[8]

*Second*, Scott argues that introducing the 911 Call would violate his Sixth Amendment rights.  The Supreme Court's Confrontation Clause jurisprudence distinguishes between testimonial statements, made for the purpose

---

[7]  FRE 803(1) (emphasis added). *Accord United States v. Jones*, 299 F.3d 103, 113 (2d Cir. 2002) (explaining that statements "nearly contemporaneous with the event described" qualify as present sense impressions).

[8]  It is also possible that the 911 Call is an "excited utterance," and independently exempt from the rule against hearsay on that basis. *See* FRE 803(2) (defining excited utterances as "statement[s] relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused."). The parties have a threshold disagreement about the proper legal framework for determining whether the "excited utterance" exception applies. Scott argues that corroboration of the allegedly "exciting" event is required — a burden that cannot be met in this case. *See* 11/17/14 Letter at 5-6. The Government disagrees, arguing that "under prevailing practice, the statement itself [can be] considered sufficient proof of the exciting event." The United States of America's Opposition to Defendant's Motion in Limine ("Opp. Mem."), at 2. The Government acknowledges, however, that some courts *have* adopted the position urged by Scott, though it remains the "minority view." *Id.* The Government also argues that even if Scott's legal position is correct, his argument still fails, because "ample [] evidence corroborates the 911 Caller's statements." *Id.* This argument is unpersuasive. The Government points to evidence that certain elements of the caller's narrative were corroborated by other evidence — for example, that the caller's assailant was headed to the basketball court inside the Mott Haven Houses. But the Government can point to no evidence that the *exciting event itself* — the brandishing of the gun — was corroborated. Under Scott's theory, therefore, no corroboration took place, and the "excited utterance" exception is inapplicable. In this sense, the issue comes down to a battle of legal theories. And it is a battle that the Court need not resolve here, because Scott's hearsay objection can be disposed of on other grounds.

of "establish[ing] or prov[ing] [] events potentially relevant to later criminal prosecution,"[9] and non-testimonial statements, which are made for a purpose other than establishing a fact or an event. In *Davis v. Washington*, the Supreme Court explained that 911 calls are non-testimonial insofar as their purpose is "to enable police assistance to meet an ongoing emergency."[10] Although the *Davis* Court left open the possibility that "one *might* call 911 to provide a narrative report of a crime absent any imminent danger"[11] — thereby transforming the call into a testimonial statement — it made clear that any call that is, in effect, a "call for help" is non-testimonial,[12] and therefore does not trigger the Sixth Amendment.

This case is on all fours with *Davis*. Although the caller never summons police to the scene, the call is obviously an effort to inform police about events that just transpired, so that they might address the situation. Here, as in

---

[9] 547 U.S. 813, 822 (2006). *Accord Crawford v. Washington*, 541 U.S. 36, 51 (2004) ("Testimony . . . is typically [a] solemn declaration or affirmation made for the purpose of establishing or proving some fact. An accuser who makes a formal statement to government officers [offers] testimony in a sense that a person who makes a casual remark to an acquaintance does not. The constitutional text, like the history underlying the common-law right of confrontation, thus reflects an especially acute concern with a specific type of out-of-court statement.") (internal citations omitted).

[10] *Davis*, 547 U.S. at 822.

[11] *Id.* at 827 (emphasis in original).

[12] *Id.*

*Davis*, the caller "was not acting as a *witness*; [he] was not *testifying*."[13] He was trying to help the police "meet an ongoing emergency."[14] Scott's attempt to distinguish *Davis* — in essence, by arguing that the caller in this case never explicitly indicated that he, or anyone else, was in imminent danger — is unpersuasive. As far as the caller (and the police) knew, a person was still wandering around the Mott Haven Houses with a firearm, with an apparent propensity for brandishing the weapon at passersby. That this constitutes an ongoing emergency is a proposition supported both by Supreme Court case law and by common sense.[15]

### III.   CONCLUSION

For the reasons set forth above, Scott's motion is DENIED as to the admissibility of the 911 Call.

---

[13]   *Id.* at 828 (emphasis in original).

[14]   *Id.*

[15]   *See Michigan v. Bryant*, 131 S.Ct. 1143, 1164 (2011) (explaining that when guns are involved, "[a]n emergency does not last only for the time between when the assailant pulls the trigger and the bullet hits the victim," and that it would be implausible — again, when guns are involved — to "constru[e] the emergency to last only precisely as long as the violent act itself.") *See also* Opp. Mem. at 5 (pointing out that, in this case, nothing about the call "suggest[s] that the dispute [between the caller and Scott] involved a purely private matter, or that the firearm-brandishing assailant no longer posed a threat to the caller or anyone else in the community").

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:       New York, New York
             November 28, 2014

## - Appearances -

**For Defendant Anthony Scott:**

Jennifer L. Brown, Esq.
Daniel G. Habib, Esq.
Federal Defenders of New York Inc. (NYC)
52 Duane Street, 10th floor
New York, NY 10007
(212) 417-8700

**For the Government:**

James M. McDonald
Robert L. Boone
Assistant U.S. Attorneys
One Saint Andrew's Plaza
New York, NY 10007
(212) 637-2200